**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CHERELLE HARRIS | : | |
| | : | No. 2:26-cv-7886 |
| v. | : | |
| | : | JURY TRIAL DEMAND |
| SBLP UPPER DUBLIN OPCO, LLC | : | |
| t/a THE 501 AT MATTISON | : | |
| ESTATE | : | |

**CIVIL ACTION COMPLAINT**

COMES NOW, Plaintiff, Cherelle Harris, by counsel, complains of Defendant, SBLP Upper Dublin Opco, LLC t/a The 501 at Mattison Estate, as follows:

JURISDICTION

1. This matter has federal jurisdiction pursuant to the Family and Medical Leave Act of 1993 (hereinafter "FMLA"), 29 U.S.C. Section 2601, et seq.

PARTIES

2. Plaintiff Cherelle Harris resides at 7715 B Washington Lane, Elkins Park, PA 19027.

3. Defendant, SBLP Upper Dublin Opco, LLC t/a The 501 at Mattison Estate, is a limited liability company with a place of business located at 501 Mattison Avenue, Ambler, Pennsylvania 19002.

4. On or about December 26, 2023, Plaintiff commenced employment with Defendant at its facility located at Ambler, PA which is in this Judicial District in Montgomery County, PA.

5. Since about 2007, Plaintiff has suffered from a tree nut allergy.

6. As a result of her tree nut allergy, if Plaintiff ingests tree nuts or tree nut residue, she can suffer a severe allergic reaction causing her to go into anaphylactic shock.

7. On the morning of January 3, 2025, Plaintiff's mother broke her femur in a fall.

8. Plaintiff left work early on January 3, 2025, and did not return to work until January 7, 2025, to care for her mother's femur fracture which is a serious health condition of a family member pursuant to the FMLA.

9. This consecutive leave was in excess of 3 days and was protected by the FMLA.

10. Upon her return-to-work on JANUARY 7, 2025, Plaintiff requested intermittent days off to care for her mother and to be excused for coming in late or leaving early intermittent days to assist her mother because of her femur fracture.

11. Plaintiff's request for intermittent leave was covered by the FMLA because Plaintiff gave notice in advance as soon as practicable, and she was needed by her mother to assist her to

attend doctor’s appointments and other tasks related to her treatment and activities of daily living which necessitated her assistance.

12. Despite placing Defendant on notice of her need to take both consecutive and intermittent leave to care for her mother’s serious health condition, Defendant did not request an FMLA certification from Plaintiff’s mother’s treating health care provider.

13. Despite receiving adequate notice that Plaintiff needed both continuous and intermittent leave to care for her mother’s serious health condition, Defendant never notified Plaintiff in writing that her leave was FMLA-qualifying as required by the Sections 825.300(d) and 825.301(a) of the FMLA regulations and never notified Plaintiff in writing of her rights and responsibilities under the FMLA as required by the FMLA Regulations at Section 825.300 (c).

14. Plaintiff continued to miss work intermittently for full and partial days to care for her mother through March 12, 2025.

15. On March 12, 2025, Plaintiff suffered an allergic reaction at her gym prior to going to work due to probable ingestion of tree nut residue in a smoothie she had for breakfast.

16. Plaintiff's lips and tongue swelled up, and she was having trouble breathing so a gym employee drove her home to get her epinephrine auto-injector ("EPI pen") which is used to treat severe allergic reactions.

17. The EPI pen did not stop her symptoms, so she was taken to AFC Urgent Care in Cheltenham from her home.

18. After she recovered to the point that she was able to do so, Plaintiff called Tess Headen (Director of Operations and Human Resources) from the urgent care facility at 10:11 a.m. to let her know her status.

19. Ms. Headen called back and left a message and Plaintiff called Ms. Headen again at about 11:45 a.m. after she left the urgent care facility, at which time Plaintiff informed Ms. Headen that she suffered anaphylactic shock, and that a doctor at the urgent care gave her a note to return on March 14, 2025.

20. On March 12, 2025, Ms. Headen told Plaintiff she was terminated for job abandonment.

21. Defendant's proffered reason for terminating Plaintiff was pretext designed to mask the true reason for Plaintiff's termination.

22. Plaintiff clearly did not abandon her job— she had a late call-out.

23. The true reason Plaintiff was terminated was because she had been taking valid FMLA protected leave for her mother's

serious health condition and this single emergency absence was used as a pretext for her termination.

24. Defendant's agent, Ms. Headen, was not happy with the time that Plaintiff was missing to care for her mother, so she decided to terminate Plaintiff on March 12, 2025, simply because she missed another day due to a serious medical emergency caused her to suffer anaphylactic shock.

25. In the one year prior to January 3, 2025, Plaintiff worked in excess of 1250 hours for the Defendant and thus was qualified to take up to 12 weeks of FMLA protected leave.

26. Plaintiff's mother's treating doctors were health care providers as defined by the FMLA.

27. Plaintiff's mother was at all times on a plan of continuing treatment by her health care provider for her aforementioned serious health condition.

28. Plaintiff provided adequate and timely notice to Defendant of her need for FMLA protected leave to care for her mother as required by the FMLA.

29. Defendant never accused Plaintiff of misusing or abusing her FMLA leave time.

30. Defendant approved Plaintiff's FMLA leave and thus acknowledged that Plaintiff was qualified for and entitled to take FMLA leave to assist her mother due to her mother's serious health condition.

31. Defendant acted by and through its agents who had authority to hire, fire, and discipline Plaintiff.

32. As a direct result of Defendant's unlawful termination of Plaintiff's employment as described above, Plaintiff has suffered and will continue in the future to suffer actual damages in the form of lost pay, lost bonuses, lost benefits and other financial losses.

33. Plaintiff has and will engage in great efforts to mitigate her damages by searching for new employment, but she has to date and may in the future be unsuccessful in her efforts to find equivalent employment.

34. Plaintiff is entitled to recover liquidated damages in an amount equal to actual damages because Defendant and its agents intentionally, and/or in bad faith, violated the FMLA.

35. Plaintiff is entitled to recover reasonable attorneys' fees and costs associated with the prosecution of this lawsuit.

36. Plaintiff is entitled to reinstatement of her employment.

COUNT 1—FMLA DISCRIMINATION/RETALIATION

37. Plaintiff repeats paragraphs 1-36 as if more fully set forth herein.

38. Defendant unlawfully discriminated against and/or retaliated against Plaintiff by terminating her employment

because she had requested and taken both continuous and intermittent FMLA leave to care for her mother due to her mother’s serious health condition.

WHEREFORE, Plaintiff demands that judgment be entered in her favor on Count 1 against Defendant for lost pay, lost bonuses, lost benefits, other financial losses, liquidated damages, compensatory damages for emotional pain and suffering, liquidated damages, attorneys’ fees, costs, reinstatement of employment and any other relief that this Honorable Court deems to be fair and proper.

/s/ Samuel A. Dion

Samuel A. Dion, Esq.
Dion & Goldberger
Signature Code: SAD2282
2001 Market Street
Suite 2500
Philadelphia, PA 19103
Cell: 215-280-0138
Main Office: 800-346-6726
Email: samueldion@aol.com
Attorneys for Plaintiff